UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LARA M.,

                                    Plaintiff,

v.                                                      5:22-CV-01407
                                                          (AMN/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                           OF COUNSEL:


LAW OFFICES OF KENNETH HILLER          JUSTIN M. GOLDSTEIN, ESQ.
  *Attorneys for Plaintiff*
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.            JASON P. PECK, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


## REPORT-RECOMMENDATION

Plaintiff Lara M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI"). (Dkt. No.

1.)  This matter was referred to me to prepare a Report and Recommendation to the Honorable

Anne M. Nardacci, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 5, 18.)  This case has proceeded in accordance with General Order 18.

Currently before this court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 16, 17.)  For the reasons set forth below, this court recommends that the District Court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## I.    <u>PROCEDURAL HISTORY</u>

On October 1, 2019, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and SSI, each alleging disability dating from October 5, 2012. (Administrative Transcript ("T.") 349-363.)  Her applications were denied initially on February 3, 2020, and her request for administrative reconsideration was denied on March 6, 2020. (T. 82-129.)  Plaintiff's request for a hearing was granted. (T. 232-242.)  On November 9, 2020, Plaintiff and vocational expert ("VE") Mary Beth Kopar testified by telephone before Administrative Law Judge ("ALJ") Kenneth Theurer. (T. 35-60.)  At the hearing, Plaintiff amended the alleged disability onset date to October 1, 2019, and in doing so, voluntarily withdrew her DIB claim. (T. 40-41.)  The ALJ issued an unfavorable decision on Plaintiff's SSI claim on November 23, 2020. (T. 130-149.) After granting Plaintiff's request for review, the Appeals Council vacated the ALJ's denial of SSI benefits on September 7, 2021 and remanded back to the same ALJ for consideration of relevant evidence related to Plaintiff's mental health impairments. (T. 150-157.)

On December 15, 2021, the ALJ held a second telephonic hearing at which Plaintiff and VE Lauren Calderon-Hall testified. (T. 61-78.)  The ALJ issued a new unfavorable decision on December 29, 2021. (T. 8-28.)  The Appeals Council denied Plaintiff's request for review on November 1, 2022. (T. 1-7.)  Plaintiff commenced this proceeding on December 29, 2022 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

II.     **GENERALLY APPLICABLE LAW**

A.     **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence

supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence

may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

  **B.**  **Standard for Benefits[1]**

  To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)
and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.   **FACTS**

As of the date of the ALJ's December 29, 2021 decision, Plaintiff was 52 years old. (T.

19, 349.)  She is a high school graduate who attended regular education classes, and

subsequently obtained an associate's degree in business and accounting. (T. 42, 1016.)  At the

time of her most recent hearing, she lived with her husband and two teenage sons. (T. 42, 764.)

Her employment history includes positions as an office manager, retail associate, data entry

clerk, and call center representative. (T. 43, 1016.)  She had not held full time employment since

2012, but regularly babysat her neighbor's daughters. (T. 71-72, 1049.)

Plaintiff's physical impairments include lower back and joint pain exacerbated by

physical activity that was attributed to her diagnosed fibromyalgia. (T. 572.)  Treatment consists

5

of both medication and physical therapy, and Plaintiff testified that she attempted to follow her rheumatologist's recommendation that she engage in daily stretching, walking, and other exercise. (T. 51-52, 571.)  Plaintiff also reported regular fatigue, memory problems, and difficulties maintaining attention and concentration that she attributed to the combination of her fibromyalgia, side effects from a concussion, and mental health impairments. (T. 569, 701, 805, 1017, 1102.)  Plaintiff has received treatment for anxiety and depression, including prescription medication managed by her primary care physician. (T. 1016.)  She attended weekly counseling sessions in 2019 and 2020 but elected not to continue after her therapist left for another practice. (T. 69-70, 1035.)

The record includes Plaintiff's medical and mental health treatment history.  Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECEMBER 29, 2021 DECISION

Based upon his review of the administrative record, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the application date of October 1, 2019. (T. 13.)  At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, fibromyalgia, obesity, migraines, a depressive disorder and an anxiety disorder." (T. 13-14.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 12.04 (Depressive, bipolar and related disorders) and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders). (T. 14-16.)  Next, the ALJ found that Plaintiff could

physically perform less than the full range of light work. (T. 16-19.)  Specifically, the ALJ found

that Plaintiff:

> can never climb ladders/ropes/scaffolds, and she can only occasionally balance,
> stoop, kneel, crouch, crawl and climb ramps/stairs.  [Plaintiff] should not work
> outdoors in bright sunshine, and she should not work with bright or flickering
> lights, such as would be experienced in welding or cutting metals.  She is limited
> to simple, routine and repetitive tasks in a work environment free of fast-paced
> production requirements involving only simple, work-related decisions, with few,
> if any, workplace changes.

(T. 16.)

In making this RFC determination, the ALJ stated that he considered all of Plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

416.929" and Social Security Ruling ("SSR") 16-3p. (T. 16.)  The ALJ further stated that he

considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. § 416.920c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations and found that her statements "are not entirely

consistent with the medical evidence and other evidence in the record . . . ." (T. 17)

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant

work. (T. 19.)  Relying on the VE testimony, the ALJ next found that there are jobs existing in

significant numbers in the national economy that Plaintiff can perform. (T. 20-21.)  Accordingly,

the ALJ found that Plaintiff was not disabled from her application date of October 1, 2019

through the date of the ALJ's decision. (T. 21.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ improperly evaluated the physical functional limitations

imposed by her fibromyalgia. (Dkt. No. 11 at 10.)  She further contends that the ALJ's

inadequate evaluation of the mental health evidence violated the Appeals Council's September 7, 2021 remand order. (*Id*. at 19-25.)   The Commissioner contends that the ALJ properly evaluated all of the record evidence, including the medical opinion evidence and Plaintiff's activities of daily living, and reached an RFC determination that is supported by substantial evidence. (Dkt. No. 16 at 6-13.)

For the reasons set forth below, this court recommends that the District Court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## VI.   RFC AND MEDICAL OPINION EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945;

*see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150; *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2. Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors:

---

[2] Plaintiff's SSI application date was October 1, 2019. (T. 354-363.) Thus, the new regulations apply in this case.

supportability; consistency; relationship with the claimant; specialization; and "other factors."
20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources,
deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ
must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he
or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and
(b)(1).  The two "most important factors for determining the persuasiveness of medical opinions
are consistency and supportability," which are the "same factors" that formed the foundation of
the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability
and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).
With respect to "supportability," the new regulations provide that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source are to
support his or her medical opinion(s) or prior administrative medical finding(s), the more
persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§
404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency,"
"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the
evidence from other medical sources and nonmedical sources in the claim, the more persuasive
the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at
§§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the
three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at
§§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical

opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

> **B.  The ALJ's Evaluation of the Functional Limitations Imposed by Plaintiff's Fibromyalgia Was Supported by Substantial Evidence.**

> **1.  Summary of Relevant Medical Opinion Evidence**

The ALJ's evaluation of the medical opinion evidence figures prominently in Plaintiff's challenge to the disability determination.  Therefore, this court will summarize the various medical opinions in the record, and the ALJ's evaluation of each, before determining whether the ALJ's decision was supported by substantial evidence.

> **a.  Consultative Examiner Dr. Kalyani Ganesh**

Dr. Kalyani Ganesh performed a consultative physical examination of Plaintiff on January 3, 2020. (T. 1011-1014.)  Prior to the examination, Plaintiff described her history of fibromyalgia and arthritis, and the aching joint pain that increased with physical activity. (T. 1011.)

During the consultative examination, Dr. Ganesh observed that Plaintiff appeared in no acute distress and demonstrated a normal gait and the ability to walk on her heels and toes without difficulty. (T. 1012.)  She did not require any assistance changing for the examination, getting on and off the examination table, or rising from a chair. (T. 1012.)  Her cervical and lumbar spine showed full flexion, full extension, full lateral flexion bilaterally, and full rotary movement bilaterally. (T. 1013.)  Plaintiff demonstrated full range of motion in her shoulders, elbows, forearms and wrists bilaterally, as well as full range of motion in her lower extremities

bilaterally. (*Id*.)  She demonstrated full strength in her arms and legs bilaterally, as well as intact

hand and finger dexterity and full grip strength. (*Id*.)

Based on this examination, Dr. Ganesh opined that Plaintiff had no gross physical

limitations. (T. 1014.)  The ALJ found Dr. Ganesh's opinion to be "somewhat persuasive." (T.

19.)  Although consistent with the results of the single consultative examination and some

portions of the record, the ALJ discounted the opinion in light of the evidence of Plaintiff's

severe physical impairments, including fibromyalgia. (*Id*.)

### b. State Agency Consultant Opinions

As part of his evaluation of Plaintiff's physical RFC, the ALJ considered the opinions of

Dr. D. Wallace and Dr. S. Stradley, state agency consultants who reviewed Plaintiff's then-

current psychiatric records. (T. 17, 100-101, 124-125.)  On January 31, 2020, Dr. Wallace opined

that Plaintiff could occasionally lift and/or carry up to twenty pounds, and could frequently lift or

carry up to ten pounds. (T. 100.)  Dr. Wallace further opined that Plaintiff could stand and/or

walk for a total of about six hours in an eight hour workday and could sit for a total of about six

hours in an eight hour workday. (*Id*.)  The state agency consultant also opined that Plaintiff had

no limitations with regard to posture, manipulation, vision, communication, or the environment.

(T. 100-101.)  In a brief accompanying narrative, Dr. Wallace cited physical examination notes

and imaging reports from November and December 2012, and opined that Plaintiff retained the

functional capacity to perform the basic exertional requirements of light work. (T. 101, 987-988.)

On February 7, 2020, Plaintiff filed a request for administrative reconsideration of her

application. (T. 188-189.)  In response to Plaintiff's request for reconsideration, Dr Stradley

reviewed Plaintiff's medical records on March 5, 2020 and affirmed Dr. Wallace's opinion in its

entirety. (T. 124-125.)

The ALJ deemed the opinions of Dr. Wallace and Dr. Stradley to be "persuasive" in light of the consultants' professional expertise and the opinions' consistency and supportability with the overall record. (T. 17.)  First, the ALJ found the opinions to be supported by the consultants' citation to diagnostic imaging of the lumbar spine that only showed mild issues, and examination results showing full range of motion of the spine and a normal gait. (T. 17, 101, 114-115, 125, 1012.)  The ALJ then compared the opinions to the broader medical record and found them consistent with examination reports describing full strength in the upper and lower extremities with no sensory deficits, as well as physician recommendations that Plaintiff be more active. (T. 17, 571, 574, 577, 1351.)  Going beyond the medical record, the ALJ compared the consultants' opinions to Plaintiff's description of her daily activities, including household chores, shopping, babysitting for friends and family, crafting projects, and scrapbooking. (T. 17-18, 48, 50-51, 571, 745, 1019, 1050, 1253.)

### c.  Primary Care Physician Dr. James Tarala

Dr. James Tarala had been Plaintiff's primary care physician since at least May 2017. (T. 888.)  In addition to treating Plaintiff's back pain and fibromyalgia, Dr. Tarala managed Plaintiff's psychiatric medication. (T. 49-50, 821, 829.)  He prepared an opinion on the functional limitations imposed by Plaintiff's physical and mental impairments on October 8, 2020. (T. 1299-1301.)  As part of that opinion, Dr. Tarala noted Plaintiff's diagnosed fibromyalgia, degenerative disc disease, generalized anxiety disorder, panic disorder, and depressive disorder and gave her an overall "fair" prognosis. (T. 1299.)

With respect to physical impairments, Dr. Tarala opined that Plaintiff could only walk one city block without needing to rest or experiencing severe pain. (*Id.*)  He further opined that Plaintiff could sit for a total of about four hours total during the workday but would need to shift

positions after sitting for about thirty minutes at one time. (*Id*.)  Likewise, Dr. Tarala opined

Plaintiff could stand or walk for about four hours total during the workday but would need to

shift positions after fifteen minutes. (*Id*.)  He estimated that Plaintiff would need to take

unscheduled five minute breaks about every two hours over the course of a workday. (T. 1300.)

Dr. Tarala further opined that Plaintiff could rarely (no more than five percent of the

workday) lift or carry up to ten pounds and could only occasionally (no more than thirty-three

percent of the workday) lift or carry lighter weight. (*Id*.)  He also opined that Plaintiff could

frequently use her hands to grasp, turn, or twist objects, but could only occasionally perform fine

manipulation with her fingers or reach in all directions with her arms. (*Id.*)

In Dr. Tarala's opinion, Plaintiff's combined impairments would frequently interfere with

her ability to maintain attention and concentration for even simple workplace tasks and would

cause her to miss up to four workdays each month. (T. 1300-1301.)  Addressing Plaintiff's

mental health impairments specifically, Dr. Tarala opined that Plaintiff was seriously limited in a

number of functional areas: maintaining regular attendance and being punctual within customary

allowances; working in coordination with or in proximity to others without being unduly

distracted; performing at a consistent pace without an unreasonable number or length of rest

periods; getting along with co-workers or peers without unduly distracting them or exhibiting

behavioral extremes; and responding appropriately to changes in a routine work setting. (T.

1301.)  He further opined that Plaintiff was  "limited but satisfactory" in other areas:

remembering work-like procedures; understanding, remembering, and carrying out very short

and simple instructions; maintaining attention for two hour segments; sustaining an ordinary

routine without special supervision; completing a normal workday and workweek without

interruptions from psychologically-based symptoms; accepting instructions and responding

appropriately to criticism from supervisors; and dealing with normal work stress. (*Id.*) Dr. Tarala opined that Plaintiff had no significant limitations in her ability to make simple work-related decisions, ask simple questions or request assistance, and be aware of normal workplace hazards and take appropriate precautions. (*Id.*) Based on these findings, Dr. Tarala opined that Plaintiff could tolerate "very minimal stress" but was capable of performing low stress jobs. (*Id.*)

The ALJ found Dr. Tarala's opinion of Plaintiff's physical impairments to be "less persuasive." As he did with the Ganesh, Wallace, and Stradley opinions, the ALJ considered whether Dr. Tarala's opinion of Plaintiff's physical functional limitations was supported by the broader medical record. (T. 19.) He found the treating source opinion to be inconsistent with imaging reports showing only mild spinal issues, and with repeated physician recommendations that Plaintiff be more active. (T. 19, 571, 574, 1351.) The ALJ also found the restrictions described by Dr. Tarala to be inconsistent with Plaintiff's regular activities including household chores, babysitting, travel, and hobbies such as scrapbooking and crafting. (T. 19, 723-724, 745.)

With regard to mental health limitations, the ALJ likewise found Dr. Tarala's opinion to be "less persuasive." (T. 19.) He noted that it was the most restrictive of any of the medical opinion evidence, and inconsistent with Plaintiff's mental health history, that contained no inpatient psychiatric hospitalizations and no current outpatient therapy. (T. 69-70, 1016, 1035.) The ALJ also cited Plaintiff's activities, including regular babysitting, as inconsistent with Dr. Tarala's description of serious psychiatric limitations.

### d. Consultative Psychiatric Examiner Dr. Jeanne Shapiro

Dr. Shapiro conducted a consultative psychiatric examination of Plaintiff on January 14, 2020. (T. 1016-1020.) Prior to the examination, Plaintiff reported that she felt depressed, unmotivated and lethargic, and described herself as anxious and emotional. (T. 1017.) She also

15

described memory problems and concentration difficulties after suffering a concussion in a fall. (*Id.*)

During her examination, Dr. Shapiro found Plaintiff to have a cooperative demeanor with an adequate manner of relating, social skills, and overall presentation. (T. 1018.) She demonstrated coherent and goal-directed thought processes with no evidence of delusions, hallucinations, or disordered thinking. (*Id.*) Her attention and concentration were intact, and she showed no memory deficits during the examination. (T. 1018-1019.) Overall, Dr. Shapiro opined that Plaintiff

> appears to have no limitations understanding, remembering, or applying simple directions and instructions. She appears to have mild limitations understanding, remembering or applying complex directions and instructions. She appears to have no limitations using reasoning and judgment to make work-related decisions. She appears to have mild limitations interacting adequately with supervisors, coworkers, and the public. She appears to have mild-moderate limitations sustaining concentration and performing a task at a consistent pace depending on her level of anxiety. She appears to have mild limitations sustaining an ordinary routine and regular attendance at work. She appears to have mild limitations regulating emotions, controlling behavior, and maintaining well-being. She appears to have no limitations maintaining personal hygiene and wearing appropriate attire. She appears to have no limitations being aware of normal hazards and taking appropriate precautions.

(T. 1019.) In Dr. Shapiro's opinion, the examination results were consistent with psychiatric problems, and suggested that Plaintiff's symptoms may interfere with her ability to function "to some degree on a daily basis" (*Id.*)

The ALJ found Dr. Shapiro's opinion to be persuasive, because it was consistent with her examination results as well as "other records that describe normal mood, normal affect, a cooperative attitude, normal psychomotor activity and intact concentration." (T. 17, 1018, 1155.) The ALJ also found the consultative examiner's opinion to be consistent with Plaintiff's

16

activities of daily living and her mental health treatment history. (T. 17, 723-724, 745, 1016, 1019.)

### e. Non-Examining State Agency Psychological Consultants

Dr. J. Weitzen reviewed Plaintiff's then-current mental health records and prepared an opinion of her functional limitations dated January 28, 2020. (T. 88-89.) This review included therapy notes, post-concussion evaluations, and Dr. Shapiro's consultative examination report. (T. 88.) Based on this review, Dr. Weitzen opined that Plaintiff had no significant limitations with regard to understanding, remembering, or applying information, and no more than mild limitations with regard to social interaction, concentration, persistence, pace, or adaptation. (*Id*.) Accordingly, Dr. Weitzen found that Plaintiff's mental health impairments were non-severe. (*Id*.)

In response to Plaintiff's February 7, 2020 request for reconsideration, Dr. E. Kamin reviewed Plaintiff's updated medical records on February 28, 2020. (T. 111-112.) Dr. Kamin affirmed Dr. Weitzen's opinion in its entirety, and thus opined that Plaintiff had no severe mental health impairments. (T. 119-123.)

The ALJ found the opinions from Dr. Weitzen and Dr. Kamin to be persuasive to the extent that they were consistent with much of the clinical record and drew from the consultants' programmatic and professional expertise. (T. 17.) However, the ALJ rejected their ultimate conclusion that Plaintiff had no severe impairments, in light of Plaintiff's testimony describing problems with attention, concentration, and pace. (T. 15, 17.)

### f. Licensed Master Social Worker ("LMSW") Laura Sullivan

LMSW Laura Sullivan saw Plaintiff for weekly or biweekly therapy sessions between May 2019 and April 2021. (T. 761, 1035, 1176.) After LMSW Sullivan left for a different

practice, Plaintiff discontinued mental health counseling due to her self-described hesitancy about "starting over" with a new therapist. (T. 69-70, 1035.)

LMSW Sullivan prepared a Medical Source Statement on September 18, 2020, describing Plaintiff's diagnosed impairments as adjustment disorder with mixed anxiety and depressed mood. (T. 1176-1178.) She listed Plaintiff's symptoms as anhedonia or pervasive loss of interest in almost all activities; decreased energy; emotional withdrawal or isolation; hyperactivity; and sleep disturbance. (T. 1176.)

In LMSW Sullivan's opinion, these mental health impairments imposed certain functional limitations. (T. 1177-1178.) She opined that Plaintiff was "seriously limited, but not precluded" in her ability to maintain attention for two hour segments. (T. 1177.) She also opined that Plaintiff was "limited but satisfactory" in her ability to work in coordination or proximity to others without being unduly distracted; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to deal with normal work stress; and to be aware of normal workplace hazards and take appropriate precautions. (T. 1177-78.) LMSW Sullivan opined that Plaintiff had no significant limitations in a number of other functional areas, including: understanding, remembering, and carrying out very short and simple instructions; maintaining attention for two hour segments; sustaining an ordinary routine without special supervision; making simple work-related decisions; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; interacting appropriately with the general public; and responding appropriately to changes in a routine work setting. (*Id.*)

LMSW Sullivan further opined that Plaintiff would typically be absent from work about two days per month due to her impairments and related treatment. (T. 1178.) The Medical

18

Source Statement contains limited narrative, but LMSW Sullivan stated that Plaintiff's psychiatric condition exacerbates her pain and other physical symptoms, because Plaintiff "perservates [sic] on her physical health and creates her own unrealistic limitations as they relate to her mental health." (*Id.*)

The ALJ found LMSW Sullivan's opinion to be "somewhat persuasive" because it was partially supported by the longitudinal record. (T. 18.)  The ALJ discounted the "serious limitations" regarding regular work attendance, in light of the lack of supporting evidence and Plaintiff's history of attending appointments, performing regular babysitting, and maintaining "most activities of daily living." (T. 19.)

### 2.  The ALJ's Physical RFC Determination Was Supported by Substantial Evidence.

Plaintiff correctly highlights the Second Circuit's recognition that fibromyalgia is a "disease that eludes [objective] measurement." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003).  "Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, *e.g.*, full range of motion, no joint swelling, normal muscle strength and normal neurological reactions[;] [t]hus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia, but may, instead, serve to confirm its diagnosis." *Campbell v. Colvin*, No. 5:13-CV-451 (GLS/ESH), 2015 WL 73763, *5 (N.D.N.Y. 2015) (emphasis in original) (footnote omitted); *accord Davis v. Berryhill*, No.  16-CV-954-JWF, 2018 WL 4629126, *4 (W.D.N.Y. 2018) (noting the common symptoms associated with fibromyalgia, including "body-wide pain and tender points in joints, muscles, tendons, and other soft tissues," as well as "fatigue, sleep problems, headaches, depression, anxiety, and other symptoms")

(citation omitted).  Accordingly, while the "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability," *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order), "denying a fibromyalgia-claimant's claim of disability based in part on a perceived lack of objective evidence is reversible error," *Lisa E. v. Comm'r of Soc. Sec.*, No. 20-CV-0037 (MWP); 2021 WL 4472469, at *7 (W.D.N.Y. Sept. 30, 2021) (quoting *Campbell*, 2015 WL 73763 at *6).

As such, "the ALJ is not entitled to rely solely on objective evidence -- or lack thereof -- related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record."  *Anysha M. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3 (N.D.N.Y. Apr. 23, 2020) (affirming where the ALJ found fibromyalgia severe, considered potentially applicable listed impairments, and "[r]ather than improperly focusing on positive objective findings to discount Plaintiff's allegations of fibromyalgia and related symptoms, the ALJ's decision indicates a careful consideration of Plaintiff's multiple severe impairments along with the various medical opinions and other evidence of record to determine Plaintiff's supported physical and mental limitations."); *see also Jackeline R.R. v. Comm'r of Soc. Sec.*, No. 19-CV-00804 (JGW), 2021 WL 22507, at *4 (W.D.N.Y. Jan. 4, 2021) (determining that the ALJ's fibromyalgia analysis was supported by substantial evidence, where he "evaluated [it] under [SSR] 12-2p[,]" "extensively discussed the characteristics of fibromyalgia[,]" and "objective findings on exam were also relatively normal and inconsistent with allegations of severe pain.").

The ALJ's evaluation of Plaintiff's fibromyalgia and other physical limitations satisfies the regulatory and judicial standard, as he discussed the longitudinal record of her diagnosis, treatment, and functional limitations in detail. (T. 17-19.)  For example, the ALJ recognized

Plaintiff's diagnosed fibromyalgia as a severe impairment, in light of her reported widespread pain, her rheumatologist's identification of 18/18 tender points in September 2020, and medical testing that led her physicians to largely rule out other potential causes of her symptoms. (T. 14, 47, 575, 581, 664, 1122.)  The ALJ also considered Plaintiff's fibromyalgia at step three, and expressly considered Plaintiff's fibromyalgia as part of the RFC determination, stating,

> . . . with regard to fibromyalgia, records just before the period in question describe a normal gait and no tenderness, swelling or effusion of the shoulders, elbows, hands or hips . . . In addition, [Plaintiff's treatment provider advised her to exercise more . . . In other words, [Plaintiff] should be more active, not less. Records from 2020 describe no trigger points.

(T. 14, 19, 570-571, 1013.)  The ALJ also considered Plaintiff's participation in physical therapy, her physician's recommendations for increased physical activities ranging from daily stretches to water aerobics, and Plaintiff's efforts at independent exercise including daily walking and regular tai chi. (T. 47-48, 50-52, 686, 1118, 1285.)  In addition, the RFC analysis addressed Plaintiff's less frequent but more intense physical activities such as monthly babysitting for her neighbor's six year old daughter, occasional hiking trips with family, and travel that included Plaintiff driving to New York City and riding the subway without significant difficulty in October 2019. (T. 18-19, 50, 52-53, 77, 701, 723, 1034, 1043-1044.)  This analysis by the ALJ drew from the broad record of Plaintiff's application materials, treatment notes, and hearing testimony.

Thus, although the ALJ discussed the objective findings in evaluating the functional limitations, it is evident that he did not rely on them in a vacuum.  Instead, the ALJ properly based his RFC determination on a "careful consideration" of the longitudinal record that included relevant treatment, medical opinion evidence, Plaintiff's daily activities, and Plaintiff's testimony. *See Melissa P. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1007 (TJM), 2022 WL 669325,

at *8 (N.D.N.Y. Mar. 7, 2022) (affirming disability determination where "ALJ did not rely only on a lack of objective findings . . . . but]pointed to other evidence of the record, such as [the p]laintiff's own daily activities and other parts of the medical record, like chiropractic treatments, that showed a lack of limitation from fibromyalgia."); *Anysha*, 2020 WL 1955326, at *5 (affirming disability determination where ALJ considered "factors beyond objective testing in evaluating Plaintiff's fibromyalgia symptoms and limitations, such as her activities, work history during the relevant period, positive responses to conservative treatment, subjective reports of no pain at times, and failure to take prescribed medication."); *see also Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Herrington v. Berryhill,* No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

Plaintiff makes a broader challenge to the physical RFC determination, arguing that the ALJ did not adequately incorporate the most restrictive limitations opined by Plaintiff's primary care physician, Dr. Tarala. (Dkt. No. 11 at 17-18.)   Like her more specific challenge to the ALJ's evaluation of fibromyalgia, this contention is countered by the decision itself.  "At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021).  The ALJ did so here, by evaluating the physician's own narrative, the broader treatment record, and Plaintiff's activities of daily living against the opined limitations.  As summarized above, he applied this approach to

each of the opinions addressing Plaintiff's physical functional limitations, which ranged from almost no restrictions (Dr. Ganesh) to highly restrictive (Dr. Tarala). Although the final RFC determination did not mirror any particular opinion, it was not required to do so. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

Accordingly, this court finds that the ALJ appropriately evaluated the functional limitations associated with Plaintiff's fibromyalgia and other physical impairments, and reached an RFC determination that was supported by substantial evidence.

### C.    The ALJ's Evaluation of the Mental Health Evidence Complied with the Appeals Council's September 7, 2021 Remand Order and Was Supported by Substantial Evidence.

Plaintiff frames her challenge to the ALJ's evaluation of the mental health evidence as one based upon purported noncompliance with the Appeals Council's September 7, 2021 remand order. (Dkt. No. 11 at 19.) At its heart, however, the challenge is premised on the ALJ's allegedly faulty evaluation of the psychiatric opinion evidence and other record evidence related to Plaintiff's mental health, resulting in an RFC that Plaintiff contends is not supported by substantial evidence. (*Id*. at 20.) The court will address the discrete issue of the ALJ's compliance with the Appeal's Council's remand order before reviewing whether his mental health RFC determination is supported by substantial evidence.

#### 1.    The ALJ Complied with the Appeals Council's Remand Order.

The applicable regulations provide that, upon remand, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent

with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b). Accordingly,

reviewing courts have found that failure to comply with the Appeals Council's remand order

may be grounds for remand. *See Dommes v. Colvin*, 225 F. Supp.3d 113, 118 (N.D.N.Y. 2016)

(collecting cases).

   In his original November 23, 2020 decision, the ALJ found that Plaintiff's severe

impairments included her diagnosed anxiety disorder and depressive disorder. (T. 135.) The ALJ

then found that Plaintiff had no more than mild mental or psychiatric limitations at step three,

and his RFC analysis did not include any discussion of potential psychiatric functional

limitations. (T. 139-143.) This inconsistency prompted the Appeals Council to remand for

"further evaluation of the severity of [Plaintiff's] mental impairments and functional limitations

imposed by those impairments . . . " and to allow the ALJ "further consideration to the claimant's

maximum residual functional capacity during the entire period at issue and provide rationale

with specific references to evidence of record in support of assessed limitations." (T. 155-156.)

   In his December 29, 2021 decision, the ALJ referenced the Appeals Council's

instructions regarding Plaintiff's mental health impairments. (T. 11.) To correct the defects

identified by the Appeals Council, the ALJ amended his analysis at step three to find a moderate

limitation in Plaintiff's ability to maintain concentration, persistence, and pace, based primarily

upon Plaintiff's own description of her symptoms and the results of the consultative psychiatric

examination. (T. 15, 725, 1017-1019.) The ALJ found no more than mild limitations in the other

functional areas. (T. 15.)

   The ALJ then amended his RFC determination to address Plaintiff's severe mental health

impairments by limiting Plaintiff "to simple, routine and repetitive tasks in a work environment

free of fast-paced production requirements involving only simple, work-related decisions, with

few, if any, workplace changes." (T. 16.)  On its face then, the ALJ satisfied the Appeals

Council's remand order.

### 2. The ALJ's Evaluation of the Mental Health Evidence Was Supported by Substantial Evidence.

Plaintiff contends that the ALJ's revised decision still falls short of the remand

instructions from the Appeals Council, because the ALJ did not adequately explain his

assessment of the mental health opinion evidence and did not provide a sufficient rationale for

his RFC determination.  In particular, Plaintiff objects to the ALJ's consideration of the treating

source opinion evidence that Plaintiff's mental health impairments significantly limited her

ability to maintain a routine and meet ordinary workplace attendance requirements.  This

argument is unpersuasive.

As summarized above, the ALJ reviewed the mental health opinions of primary care

physician Dr. Tarala, consultative psychiatric examiner Dr. Shapiro, state agency psychological

consultants Dr. Weitzen and Dr. Kamin, and LMSW Sullivan.  Just as he did with the medical

opinions addressing Plaintiff's physical functional limitations, the ALJ's explained his analysis

of the supportability and consistency of each mental health opinion by referencing the treatment

record, Plaintiff's daily activities, and Plaintiff's hearing testimony. (T. 17-19.)

Assessing this longitudinal treatment record, the ALJ stated:

. . . with regard to mental health issues, records describe normal mood, normal
affect, a cooperative attitude, normal psychomotor activity and intact
concentration [citation omitted].  Other records from the period in question
describe normal motor activity, normal mood, clear speech and normal cognition
[citation omitted].  [Plaintiff] testified that she is not currently receiving any
mental health treatment . . . . At the consultative examination, [Plaintiff] was
cooperative with coherent and goal directed thought processes, as well as intact
attention, concentration, and memory [citation omitted].  At that time, [Plaintiff]
noted her ability to perform chores, care for her family, attend appointments,
watch television, scrapbook, quilt and "play on her tablet." [citation omitted]

25

(T. 18, 69, 1018-1019, 1155, 1172.)

In rejecting the opinion of Dr. Tarala and LMSW Sullivan that Plaintiff's impairments would cause her to frequently miss work, the ALJ erred to the extent that he relied on Plaintiff's history of attending medical appointments. *Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022) (holding that attendance at medical appointments is "unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment."). However, such error was harmless, because the ALJ provided a number of other valid reasons for questioning the reliability of these opinions, including Plaintiff's ability to routinely babysit young children, travel (including driving to New York City), perform household chores and tasks, and engage in crafts and other hobbies. *See Brian D. v. Comm'r of Soc. Sec.,* No. 3:21-CV-1368 (CFH), 2023 WL 1765429, at *10 (N.D.N.Y. Feb. 3, 2023) (remanding where the ALJ relied exclusively on plaintiff's ability to attend medical appointments to discount opinion that Plaintiff could not meet a regular work schedule); *Sharon R. v. Kijakazi*, No. 3:20-CV-902 (ATB), 2021 WL 3884257, at *7 (N.D.N.Y. Aug. 31, 2021) (concluding that "the ALJ did not err in relying on [the] plaintiff's ability to attend her medical appointments in addition to all of her other daily activities in determining that there were no "marked" limitations to maintaining a routine."); *Della M. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1281(TWD), 2020 WL 1030645, at *6 (N.D.N.Y. Mar. 3, 2020) (concluding that the ALJ did not err where he "afforded partial weight to Dr. Slowik's opinion, but rejected the marked limitations for maintaining a regular schedule, and pointed to [the p]laintiff's ability to care for three children and her elderly parents, drive, shop, and attend her medical appointments.). In addition, Dr. Tarala or LMSW Sullivan did not offer any support for their opinions regarding potential

absenteeism, and Plaintiff has not identified any such supporting evidence in this proceeding.

Moreover, the ALJ's RFC determination is consistent with Dr. Shapiro's consultative psychiatric

opinion that Plaintiff had no more than mild limitations with regard to attendance and sustained

routines.[3] (T. 1019.)

In setting forth this analysis of Plaintiff's longitudinal treatment history, Plaintiff's

testimony, and Plaintiff's activities of daily living, the ALJ provided substantial evidence to

support his evaluation of the mental health opinion evidence and issue an RFC determination

consistent with the record. *See Matta*, 508 F. App'x at 56. At best, Plaintiff's challenge to the

ALJ's mental health RFC determination is" premised upon a disagreement over how the ALJ

resolved arguably conflicting evidence" about Plaintiff's functional limitations. *See Kimball v.

Comm'r of Soc. Sec.*, No. 6:14-CV-0698 LEK/ATB, 2015 WL 4251163, at *9 (N.D.N.Y. July

13, 2015). This court will not reweigh the evidence presented to the ALJ. *See Warren v.

Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov.

18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not

disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . .

nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of

law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the

record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)

(alteration in original)), *report-recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec.

13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of

---

[3] Unlike this case, *Rucker* was governed by the treating physician rule, and the treating psychiatrist's opinion regarding absenteeism was supported by records showing repeated psychiatric hospitalization. *Rucker*, 48 F.4th at 92-94.

the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

**ACCORDINGLY**, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 16) be **GRANTED**; Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    December 20, 2023
          Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge